CENTER FOR DISABILITY ACCESS
Russell Handy, Esq., SBN 195058
Dennis Price, Esq. SBN 279082
Mail: PO Box 262490
   San Diego, CA 92196-2490
Delivery: 9845 Erma Road, Suite 300
   San Diego, CA 92131
(858) 375-7385; (888) 422-5191 fax
russ @ potterhandy.com
   Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **Scott Johnson**, <br><br> Plaintiff, <br><br> v. <br><br> **Blackhawk Centercal, LLC**, a Delaware Limited Liability Company; **Starbucks Corporation,** a Washington Corporation, <br><br> Defendants. | **Case:** 3:17-cv-02454-WHA <br><br> **Plaintiff's Reply Brief in Support of Motion for Summary Judgment** <br><br> Date: November 29, 2018 <br> Time: 8:00 a.m. <br> Ctrm: 12 (19th Floor) <br><br> Hon. Judge William Alsup |

# TABLE OF CONTENTS

TABLE OF CONTENTS .................................................................................. i

TABLE OF AUTHORITIES ............................................................................ ii

    I.    The Three Primary Issues Presented ........................................................ 1

    II.   The sales counter does not comply with the ADA Standards and Johnson is being denied full and equal access. Starbucks' argument that there is, essentially, *no width requirement* for an accessible sales counter is erroneous .................... 1

         A.    The ADA has a width requirement for accessible counters. Starbucks's argument to the contrary misconstrues the law and makes no sense. .................... 2

         B.    By failing to provide an accessible sales counter, Starbucks has denied Johnson full and equal enjoyment as a matter of law. Moreover, the undisputed evidence is that the counter violation created difficulty for Johnson. The fact that Johnson could successfully deal with the barrier does not change these facts. ............................... 5

    III.  Neither Johnson's ADA claim for remedial relief nor his Unruh claim for damages are time barred. Starbucks's arguments are nonsensical and unsupported by the law. .................... 9

    IV.  There is no triable issue regarding standing for Johnson's claims. Starbucks's arguments misconstrue the law. ...................... 12

    V.   Conclusion ............................................................................................ 15

# TABLE OF AUTHORITIES

**Cases**

*Antoninetti v. Chipotle Mexican Grill, Inc.*,
   614 F.3d 971 (9th Cir. 2010) .................................................................................. 13

*Chapman v. Pier 1 Imports (U.S.) Inc.* ("*Chapman I*"),
   631 F.3d 939 (9th Cir. 2011) .................................................................................... 6

*Chapman v. Pier 1 Imports (U.S.) Inc.* ("*Chapman II*"),
   779 F.3d 1001 (9th Cir. 2015) .................................................................................. 8

*Civ. Rights Educ. and Enf't Ctr. v. Hosp. Properties Tr.*,
   867 F.3d 1093 (9th Cir. 2017) ................................................................................ 13

*Crandall v. Starbucks Corp.*,
   249 F. Supp. 3d 1087 (N.D. Cal. 2017) .................................................................... 7

*Doran v. 7-Eleven, Inc.*,
   524 F.3d 1034 (9th Cir. 2008) ............................................................................ 6, 15

*Havens Realty Corp. v. Coleman*,
   455 U.S. 363 (1982) ............................................................................................ 9, 10

*Johnson v. Saleh*,
   2017 WL 3264042 (E.D. Cal. Aug. 1, 2017) ........................................................... 11

*Kalani v. Starbucks Coffee Co.*,
   698 Fed. Appx. 883 (9th Cir. 2017) ..................................................................... 5, 9

*Kalani v. Starbucks Corp.*,
   81 F. Supp. 3d 876 (N.D. Cal. 2015) ........................................................................ 5

*Langer v. McHale*,
   2014 WL 5422973 (S.D. Cal. 2014) ........................................................................ 11

*Lemmons v. Ace Hardware Corp.*,
   2014 WL 3107842 (N.D. Cal. 2014) ....................................................................... 11

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) ................................................................................................ 14

*Nat'l Fire Ins. Co. v. Argonauts Ins. Co.*,
 701 F.2d 95 (9th Cir.1983) ........................................................................ 14

*Ramirez v. Sam's for Play Café*,
 2013 WL 4428858 (N.D. Cal. 2013) ........................................................ 14

*S.E.C. v. Phan*,
 500 F.3d 895 (9th Cir. 2007) ................................................................... 14

*Schuler v. Chronicle Broad. Co., Inc.*,
 793 F.2d 1010 (9th Cir.1986) .................................................................. 14

*Siegel v. Shell Oil Co.*,
 612 F.3d 932 (7th Cir. 2010) ................................................................... 14

*State Dept. of Health Services v. Superior Court*,
 31 Cal.4th 1026 (2003) ............................................................................ 11

*Trafficante v. Metro. Life Ins. Co.*,
 409 U.S. 205 (1972) ................................................................................. 15

*Valle de Oro Bank v. Gamboa*,
 32 Cal. Rptr. 2d 329 (1994) .................................................................... 11


**Statutes**

42 U.S.C. § 12182(a) .......................................................................................... 6

Cal. Civ. Code § 52(a) ...................................................................................... 10

Cal. Civ. Code § 55.56(f) ................................................................................. 11


**Regulations**

36 C.F.R., Part 1191, Appendix B, § 202.3, Exception 2 ................................. 3

36 C.F.R., Part 1191, Appendix D, § 904.4 ...................................................... 2

36 C.F.R., Part 1191, Appendix D, § 904.4.1 ................................................... 2

36 C.F.R., Part 1191, Appendix D, § 904.4.1, Exception ................................ 2

36 C.F.R., Part 1191, Appendix D, § 904.4.2 ................................................................ 2

36 C.F.R., Part 1191, Appendix D, § 904.4.4, Exception ............................................... 2

Reply Brief for MSJ　　　　　　　　　　　　　　　　Case: 3:17-cv-02454-WHA

## I. The Three Primary Issues Presented

There are three primary issues. *Issue One*: Does the Starbucks sales-counter configuration comply with the 2010 Standards and was Johnson denied full and equal enjoyment? *Issue Two*: Are Johnson's claims time-barred by the statute of limitations? *Issue Three*: Does Johnson have standing for his ADA claim?

## II. The sales counter does not comply with the ADA Standards and Johnson is being denied full and equal access. Starbucks's argument that there is, essentially, *no width requirement* for an accessible sales counter is erroneous.

The physical layout of the sales counter is not contested. Starbucks's Senior Project Manager explains: "There is one continuous counter, uniform in height and depth, for the purpose of conducting customer transactions."[1] Many photos have been provided.[2] On this long counter, Starbucks explains that it places two cash registers and displays of merchandise for sale, leaving some space next to each register for customers.[3] Johnson agrees completely with this factual assessment. Good, large photos of that situation are part of the record.[4] This is the counter situation that Starbucks presents to its customers:



Photo (Docket Entry 54-9) p. 6, red lines

---

[1] Pereira Dec (Docket Entry 94-2), ¶ 3.
[2] *See*, e.g., Photo of Counter (Docket Entry 54-9), p. 1.
[3] Pereira Dec (Docket Entry 94-2), ¶¶ 4-6.
[4] *See*, e.g., Photos of Counter (Docket Entry 54-9), pp. 2-6.

1

Johnson argues that the failure to provide 36 inches of clear, useable counter width space violates the ADA, while Starbucks disagrees and presents two arguments: (1) the ADA does not require 36 inches of width and (2) Johnson has not been denied full and equal access in violation of the ADA. Both of those issues are analyzed and discussed below.

### A. The ADA has a width requirement for accessible counters. Starbucks's argument to the contrary misconstrues the law and makes no sense.

Under the ADA Standards, sales counters must comply with one of two configurations.[5] If the counter provides for a forward approach (where knees and toes can go under the counter), a portion of counter must be wheelchair accessible, i.e., *30 inches in length* and no higher than 36 inches.[6] If the counter does not provide for a forward approach—such as in this case—then it necessitates a parallel approach and there must be a portion of accessible counter that is *36 inches in length* and no higher than 36 inches.[7] There is one exception that modifies the length requirement. In alterations, if the compliance would result in a reduction of the number of counters, then the *length need only be 24 inches*.[8] There can be little doubt that the accessibility standards have a width requirement.

But Starbucks argues that there is another exception that modifies—even entirely nullifies—the width obligation. That exception reads: "EXCEPTION: Where the provided counter surface is less than 36 inches (915 mm) long, the entire counter surface shall be 36 inches (915 mm) high maximum above the finish floor."[9] According to Starbucks, this exception means that the 36-inch width requirement *only* applies in two-tier situations, i.e., where there is a higher counter area for ambulatory persons and a lowered portion

---

[5] 36 C.F.R., Part 1191, Appendix D, § 904.4.
[6] 36 C.F.R., Part 1191, Appendix D, § 904.4.2
[7] 36 C.F.R., Part 1191, Appendix D, § 904.4.1
[8] 36 C.F.R., Part 1191, Appendix D, § 904.4.4, Exception.
[9] 36 C.F.R., Part 1191, Appendix D, § 904.4.1, Exception.

2

for wheelchair users. Starbucks explains:

> The main rule of 904.4.1 [the width requirement] does not apply as Starbucks does not maintain a sales counter above 36 inches for some customers, and a separate portion of the counter 36 inches high maximum above the finish floor; the entire provided counter surface is 36 inches high maximum above the finish floor. The Exception to 904.4.1 controls.

[Defense Brief (Docket Entry 94), p. 15, lines 12-16.]

In other words, according to Starbucks, the ADA Standards only care about width in a two-tier situation but if the counter is all one height . . . don't worry about it, a business is free to provide a mere 1-inch of width if it chooses. This interpretation is nonsensical. The exception does not say this. It does not waive—or purport to waive—the width requirement for single-height counters. The Standards clearly address width as an important element to accessibility. Why wheelchair users would benefit from a width requirement where a two-tiered counter is found but not benefit from useable width where there is a single-height counter is not explained.

    No one likes stooping to use those low counters. But they are necessary for wheelchair users. Thus, under section 904.4.1, to accommodate wheelchair users, there must be at least a 36-inch wide portion of lowered counter. And if the entire counter is 36 inches or less, then 904.4.1's exception does not allow for a two-tiered counter because there is simply not enough counter to provide both a higher section and lowered section. Thus, the entire counter must be at the lower height. Wheelchair users have a civil-right entitlement that ambulatory persons do not have. Thus, in those situations where a 36-inch wide counter cannot be provided—for example, where it is technically infeasible[10]— the height obligation is still in effect. Section 904.4.1's exception is designed to protect wheelchair users and provide maximum accommodation.

    Ironically, though, Starbucks's interpretation of section 904.4.1 would permit *exactly what that section seeks to prohibit*. Starbucks believes that so long as its counter is

---

[10] 36 C.F.R., Part 1191, Appendix B, § 202.3, Exception 2.

3

one height, it can dispense with the width requirement. Starbucks argues that there is *no width requirement* for sales counters unless they are two-tiered.

Considering Starbucks's argument from a different perspective demonstrates its absurdity. Let's assume that a business has a 12-foot long counter that has 9-feet of higher counter space and a 36-inch lowered portion of counter. Consider this photo as a demonstrative example:



Under Starbucks's interpretation, this business must provide that 36-inches of lowered counter space seen on the right side. Starbucks agrees that this business would not be permitted to render portions of that 36-wide counter unusable by placing displays and merchandise on it. But, according to Starbucks, if this business simply lowered the 9-foot higher section so that the entire counter was one, uniform height of 36 inches, then it could fill almost the entire 12-foot length with displays and merchandise, leaving only a few inches for customer transactions. According to Starbucks, there is no width requirement at all for a lowered-single-height counter. And this is exactly what Starbucks has done. It has a long counter (much longer than 36 inches) but it has chosen to fill it with merchandise displays, leaving only a small portion available for customer transactions. Starbucks is in violation of the ADA.

And Starbucks has been sued repeatedly and by a variety of people for this very problem. In *Kalani v. Starbucks*, Starbucks "testified that managers are instructed to place sale and promotional items, so-called "impulse buys," on the transaction counter," which rendered it less than 36 inches in width.[11] The court found that "no reasonable trier of fact could conclude that the point of sale counter satisfies the 36 inch length requirement . . . ."[12] On appeal, the Ninth Circuit affirmed: "The district court also properly granted summary judgment on Plaintiff-Appellee's claim that Starbucks Company failed to maintain a readily accessible thirty-six-inch-long point of sale counter at the Store, as required under the ADA."[13] In *Crandall v. Starbucks*, this was again a key issue: "Even once he got to the counter, Plaintiff further alleges that additional merchandise displays further blocked his reach to the cashier. The 2010 ADAAG requires accessible clear space on the counter be at least 36 inches wide and that the accessible portion of the counter top extend the same depth as the sales or service counter top."[14]

### B. By failing to provide an accessible sales counter, Starbucks has denied Johnson full and equal enjoyment as a matter of law. Moreover, the undisputed evidence is that the counter violation created difficulty for Johnson. The fact that Johnson could successfully deal with the barrier does not change these facts.

Starbucks argues that there is a triable issue whether the "merchandizing at issue was a barrier to Plaintiff"[15] because on "every occasion, Plaintiff was able to place his order and pay for his transaction"[16] and, therefore, there is "no evidence" that a counter violation denied Johnson "full and equal access."[17] Starbucks's argument misconstrues

---

[11] *Kalani v. Starbucks Corp.*, 81 F. Supp. 3d 876, 887 (N.D. Cal. 2015).

[12] *Kalani, supra,* 81 F. Supp. 3d at 887.

[13] *Kalani v. Starbucks Coffee Co.*, 698 Fed. Appx. 883, 886 (9th Cir. 2017)

[14] *Crandall v. Starbucks Corp.*, 249 F. Supp. 3d 1087, 1109 (N.D. Cal. 2017)

[15] Defense Brief (Docket Entry 94), p. 12, lines 4-5.

[16] Defense Brief (Docket Entry 94), p. 11, lines 9-10.

[17] Defense Brief (Docket Entry 94), p. 11, lines 4-5.

5

the facts and the law.

The standard is not whether an illegal barrier *prohibits* access. It is about equality of access. "Under the ADA, when a disabled person encounters an accessibility barrier violating its provisions, it is not necessary for standing purposes that the barrier completely preclude the plaintiff from entering or from using a facility in any way."[18] Persons with disabilities are entitled to a certain quality of access. The ADA "does not limit its antidiscrimination mandate to barriers that completely prohibit access."[19] That standard is "full and equal enjoyment of the goods, services, facilities, privileges, advantages or accommodations" at a place of public accommodation.[20] The Ninth Circuit has held that the phrase "full and equal" is a term of art, having specific reference to the ADA Standards: "the ADAAG establishes the technical standards required for 'full and equal enjoyment'" and that "if a barrier violating these standards relates to a plaintiff's disability, it *will* impair the plaintiff's full and equal access" and this "constitutes 'discrimination' under the ADA."[21]

In fact, the *Chapman* court, sitting *en banc*, held that this was an objective test looking to the ADA Standards and not a subjective one that relied upon the plaintiff's actual experience:

> A disabled person who encounters a "barrier," i.e., an architectural feature that fails to comply with an ADAAG standard relating to his disability, suffers unlawful discrimination as defined by the ADA. 42 U.S.C. § 12182(b)(1)(A)(i). Indeed, by "establish[ing] a national standard for minimum levels of accessibility in all new facilities," *Indep. Living Res.*, 982 F.Supp. at 714, the ADAAG removes the risk of vexatious litigation that a more subjective test would create. Those responsible for new construction are on notice that if they comply with the ADAAG's objectively measurable requirements, they will be free from suit by a person who has a particular disability related to that requirement.

[*Chapman, supra,* 631 F.3d at 947, fn. 5.]

---

[18] *Chapman v. Pier 1 Imports (U.S.) Inc.* ("*Chapman I*"), 631 F.3d 939, 947 (9th Cir. 2011).

[19] *Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1041 at fn. 4 (9th Cir. 2008)

[20] 42 U.S.C. § 12182(a)

[21] *Chapman I, supra,* 631 F.3d at 947 (emphasis added)

6

1  The *Chapman* court not have been clearer: "Where the barrier is related to the particular
2  plaintiff's disability, however, an encounter with the barrier *necessarily injures* the plaintiff
3  by depriving him of full and equal enjoyment of the facility."[22] Johnson is a quadriplegic
4  wheelchair user and the lack of a wheelchair accessible transaction counter affects his
5  disability. As a quad, he doesn't have the level of motor acuity that someone with full
6  control of their hands and fingers would. Lacking counter space means he fumbles around
7  and drops things repeatedly, it lets him open his wallet on the counter to get stuff out of it
8  without fear of it falling on the floor. Johnson's unrebutted declaration is that because of
9  the counter barrier, he had to lean forward into the counter with the support of his hands
10 and balance himself, to collect the leftover change and, due to his disability, he has
11 extremely poor balance leaning forward and this, therefore, caused him "difficulty,
12 discomfort and frustration."[23] There is no evidence to the contrary.

Starbucks's argument that the lack of an accessible sales counter may not be a barrier because Johnson was able to overcome the violation has no factual or legal support. This was and is an unlawful barrier. Johnson was denied, as a matter of law, full and equal enjoyment. Starbucks has been sued a lot for this violation and has floated this argument before: "Defendant also argues that there was no ADA violation because Plaintiff testified that he reached the transaction counter and was able to buy a coffee. This argument ignores the law on harm in access barrier cases: the ADA does not require a plaintiff to have been denied access altogether; all it requires is that a plaintiff be denied full and equal access. Thus, Plaintiff does not lack standing merely because he was able to buy a coffee."[24]

---

[22] *Chapman I, supra,* 631 F.3d at 947, fn. 4 (emphasis added)
[23] Johnson Declaration (Docket Entry 54-5), ¶¶ 6-9.
[24] *Crandall v. Starbucks Corp.*, 249 F. Supp. 3d 1087, 1106 (N.D. Cal. 2017)

7

Starbucks also relies upon a subsequent *Chapman* decision[25] for the proposition that sales counters cluttered with small items are not barriers.[26] But *Chapman II* does not help Starbucks here. In *Chapman II*, the court affirmed summary judgment for plaintiff over a cluttered merchandise aisle but reversed summary judgment for the cluttered sales counter.[27] With respect to the cluttered merchandise aisle, the "evidence demonstrates that Pier 1 repeatedly failed to maintain accessible routes in its Store" and that some of the obstructions "were almost surely placed there by the Store's staff rather than by customers."[28] In fact, the store's merchandise aisles were obstructed "on all eleven visits" by the plaintiff.[29] But the *Chapman II* court found a clear "contrast" with respect to the sales counter where "there were items on the sales counter on only two or three visits" and the Pier 1 employees "promptly removed" those items permitting Chapman to actually use an unobstructed counter.[30] Thus, there was "insufficient evidence that the obstructions on the counter violated his rights under Title III of the ADA."[31]

In the present case, the facts are entirely different. Rather than an occasional problem with an obstructed sales counter, Johnson found the sales counter obstructed on every one of his nine visits.[32] In fact, Starbucks openly admits that it intentionally obstructs the counter with merchandise displays and other objects, believing that there is no ADA width requirement for sales counters of a singular height. Starbucks employees did not remove these displays to permit Johnson to use a clear and unobstructed counter. The *Chapman II* decision simply does not help Starbucks in this case. In fact, recently, the

---

[25] *Chapman v. Pier 1 Imports (U.S.) Inc.* ("*Chapman II*"), 779 F.3d 1001 (9th Cir. 2015)
[26] Defense Brief (Docket Entry 94), p. 11, line 21 – p. 12, line 6.
[27] *Chapman II, supra*, 779 F.3d at 1009-10.
[28] *Chapman II, supra*, 779 F.3d at 1009.
[29] *Chapman II, supra*, 779 F.3d at 1010.
[30] *Chapman II, supra*, 779 F.3d at 1010.
[31] *Chapman II, supra*, 779 F.3d at 1009.
[32] Johnson Declaration (Docket Entry 54-5), ¶¶ 6-7.

8

Ninth Circuit has had an occasion to consider the Starbucks counter practice in light of *Chapman II*. Expressly citing and contrasting the *Chapman II* decision, the Ninth Circuit found that "the items placed on [Starbucks'] point of sale counter were not 'isolated or temporary interruptions,' but rather reoccurring barriers to access by patrons in wheelchairs."[33] The *Kalani* court affirmed summary judgment for plaintiff.

### III. Neither Johnson's ADA claim for remedial relief nor his Unruh claim for damages are time barred. Starbucks arguments are nonsensical and unsupported by the law.

Starbucks argues that when Johnson first encountered obstructed counters at this Starbucks in 2015, a two-year statute of limitations began to run and no claims could be filed after that.[34] This argument borders on the silly. This is not a discrete and isolated event that is being challenged in this lawsuit. Instead, this is an ongoing policy and practice.

Under the continuing violation doctrine, the statute of limitations is effectively tolled when there is an ongoing violation but will not toll the statute of limitations when the alleged wrong is a "discreet act" of discrimination.[35] In *Havens*, persons with disabilities brought suit under the Fair Housing Act alleging racially discriminatory practices.[36] The defendant, an owner of an apartment complex, sought to dismiss claims because they fell outside of the 180 day statute of limitations.[37] In denying the motion to dismiss, the *Havens* court distinguished between acts that are singular or discrete and those that are continuing. While the former (discreet acts) are subject to the statute of limitations, the latter (continuing) are tolled under the continuing violation doctrine

---

[33] *Kalani v. Starbucks Coffee Co.*, 698 Fed. Appx. 883, 886 (9th Cir. 2017)

[34] Defense Brief (Docket Entry 94), p. 19, lines 13-16.

[35] *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 381 (1982).

[36] *Havens*, *supra*, 455 U.S. at 366-68.

[37] *Havens*, *supra*, 455 U.S. at 380.

because the "staleness concern" disappears when there is a continuing violation.[38] Because the *Havens* defendant had an unlawful practice that continued during the limitations period, the statutory period was tolled and claims outside of the 180 day limit were allowed.[39] The Supreme Court concluded that where a plaintiff: "challenges not just one incident of conduct violative of the Act, but an unlawful practice that continues into the limitations period, the complaint is timely when it is filed within 180 days of the last asserted occurrence of that practice."[40]

Moreover, in the present case, the only remedy under the ADA is for an injunction. Johnson cannot recover damages for a specific encounter under the ADA. To obtain an injunction, Johnson needs to establish that he will encounter the same violation *in the future*. Starbucks has not changed its practice. Despite lots of litigation, Starbucks is holding steadfast to its claim that there is no width obligation for its counters. Johnson's ADA claim is not time barred. He is challenging an ongoing discriminatory practice.

Finally, with respect to the Unruh claim for damages, Johnson is not seeking damages for claims that took place before the statute of limitations. And Starbucks knows this but argues that:

> Plaintiff is likely to argue in reply that his subsequent visits to the subject Starbucks started a new statute of limitations for each visit. But "a single tort can be the foundation for but one claim for damages." *Pooshs v. Philip Morris USA, Inc.* (2011) 51 Cal.4th 788, 796.
>
> [Defense Brief (Docket Entry 94), p. 19, lines 17-19.]

The argument that a "single tort" can be the foundation for but one claim for damages is inapplicable here for two reasons. First, under Unruh, Johnson can recover statutory damages for "each and every offense"[41] which is further explained as "on each particular

---

[38] *Havens*, *supra*, 455 U.S. at 380.

[39] *Havens*, *supra*, 455 U.S. at 381.

[40] *Havens*, *supra*, 455 U.S. at 380-81.

[41] Cal. Civ. Code § 52(a).

10

occasion that the plaintiff was denied full and equal access."[42] And this makes sense. Each day that Starbucks opens its doors in the morning to customers, it has a duty not to discriminate. In this particular case, the barrier is moveable and always changing. New displays and merchandise are placed on the counter by Starbucks. Johnson has a right to go the Starbucks at any time and expect not to be discriminated against.

Starbucks, however, argues that Johnson "cannot elect to encounter the same barrier—one of which he is already aware—and be said to have suffered a new injury each time."[43] This is simply untrue. Johnson does not have to refrain from going to this Starbucks. "The rule of mitigation of damages has no application where its effect would be to require the innocent party to sacrifice and surrender important and valuable rights."[44] And each such visit does result in a fresh offense against him. Numerous courts that have grappled with this issue have concluded that there is no duty under the law to mitigate statutory penalties. The *Langer v. McHale*[45] court and the *Johnson v. Saleh*[46] court agree with *Johnson v. Bourbon*[47] that there is no duty to mitigate statutory damages. The *Lemmons v. Ace Hardware* court awarded 13 statutory penalties and held that: "there is no authority for applying the avoidable consequences doctrine [another phrase for "mitigation"][48] in an Unruh Act case."[49]

Johnson is not seeking any damages for encounters outside the two-year statutory window.

---

[42] Cal. Civ. Code § 55.56(f).

[43] Defense Brief (Docket Entry 94), p. 19, lines 20-21.

[44] *Valle de Oro Bank v. Gamboa*, 32 Cal. Rptr. 2d 329, 332 (1994).

[45] *Langer v. McHale*, 2014 WL 5422973, at *4 (S.D. Cal. 2014)

[46] *Johnson v. Saleh*, 2017 WL 3264042, at *2 (E.D. Cal. Aug. 1, 2017)

[47] *Johnson v. Bourbon Properties, LLC*, 2017 WL 4038355, at *2 (E.D. Cal. Sept. 13, 2017) (internal quotes and cites omitted)

[48] *See State Dept. of Health Services v. Superior Court*, 31 Cal.4th 1026, 1043 (2003).

[49] *Lemmons v. Ace Hardware Corp.*, 2014 WL 3107842, *6 (N.D. Cal. 2014)

### IV. There is no triable issue regarding standing for any of Johnson's claims. Starbucks's arguments misconstrue the law.

Starbucks argues that: "A genuine issue of material fact exists as to whether Plaintiff has standing to seek injunctive relief under the ADA as he has not demonstrated a sufficient likelihood of being wronged in a similar way in the future."[50] It is an odd argument because Starbucks has not fixed its counter situation and is robustly defending it. Thus, the only question is whether Johnson is likely to return to this Starbucks because, if he returns, he will certainly encounter the same violation.

Starbucks argues that it is unlikely Johnson will return. But the argument borders on the bizarre. As this court is aware—having ordered production of evidence for all visits—Johnson patronized this Starbucks on 12 occasions prior to filing the lawsuit. Defense counsel has compiled a list of those visits.[51] In fact, it is undeniable that Johnson patronizes Starbucks everywhere he goes. As the defense noted in their motion to stay, Johnson is suing 21 different Starbucks locations.[52] Moreover, Johnson has provided additional reasons why he is regularly near this Starbucks location and has declared his intention to return.[53]

Starbucks has no evidence to the contrary. Instead, Starbucks hammers on Johnson's litigation history, noting the many businesses that Johnson sues, the many business that Johnson visits on the days he visits Starbucks. Starbucks does an excellent job of establishing that Johnson is an active ADA prosecutor, noting the scores of other businesses—including restaurants and gas stations—across numerous towns on the same days that Johnson patronized Starbucks.[54] But Johnson does not deny he is actively and aggressively searching out businesses that violate the ADA. The fact that Johnson is an

---

[50] Defense Brief (Docket Entry 94), p. 12, lines 8-10.
[51] Guas Declaration (Docket Entry 94-1), ¶ 8.
[52] *See*, e.g., Motion to Stay (Docket Entry 44), p. 2, lines 4-7.
[53] Johnson Declaration (Docket Entry 54-5), ¶¶ 12-15.
[54] Defense Brief (Docket Entry 94), p. 14, lines 11-20.

12

Reply Brief for MSJ                                           Case: 3:17-cv-02454-WHA

active ADA litigator means it is *more likely* that he will frequent businesses, including this Starbucks, not less likely.

The Ninth Circuit has acknowledged—in multiple published opinions—that most ADA lawsuits are brought by a small number of private plaintiffs who view themselves as champions of the disabled, and "for the ADA to yield its promise of equal access for the disabled, it may indeed be necessary and desirable for committed individuals to bring serial litigation advancing the time when public accommodations will be compliant with the ADA."[55] Just last year, the Ninth Circuit finally tackled the issue head-on and held: "We also conclude that motivation is irrelevant to the question of standing under Title III of the ADA."[56] In *Civ. Rights*, the court held that "as a matter of first impression, a plaintiff suing under Title III of the ADA can claim tester standing."[57] In other words, it does not matter *why* Johnson went to the Starbucks, he has a right to full and equal access and to be free from discrimination. So, when Starbucks claims that this litigation history "raises significant credibility issues concerning Plaintiff's testimony that the Blackhawk Museum was the impetus for his trips to Danville,"[58] Starbucks errs both factually and legally.

First, on the factual issue, Johnson has never claimed that his *only* reason for going to Danville is the Blackhawk Museum. It is merely *one reason* that brings him to the area. Johnson also drives right through here on his way to San Jose for mediations.[59] As to this, Starbucks argues: "Other than self-serving testimony, Plaintiff presents no evidence that he actually visited the Blackhawk Museum or attended mediation in San Jose on any of the days he alleges."[60] This argument has no legal merit. All declarations are self-serving.

---

[55] *Antoninetti v. Chipotle Mexican Grill, Inc.*, 614 F.3d 971, 980 (9th Cir. 2010)

[56] *Civ. Rights Educ. and Enf't Ctr. v. Hosp. Properties Tr.*, 867 F.3d 1093, 1102 (9th Cir. 2017).

[57] *Civ. Rights*, supra, 867 F.3d at 1093.

[58] Defense Brief (Docket Entry 94), p. 14, lines 21-22.

[59] Johnson Declaration (Docket Entry 54-5), ¶¶ 12-15.

[60] Defense Brief (Docket Entry 94), p. 13, line 26 – p. 14, line 2.

13

Reply Brief for MSJ                                     Case: 3:17-cv-02454-WHA

"Declarations oftentimes will be 'self-serving' and properly so, because otherwise there would be no point in a party submitting them. Only in certain instances—such as when a declaration states only conclusions, and not such facts as would be admissible in evidence—can a court disregard a self-serving declaration."[61]

Here, Johnson's declaration is admissible. Starbucks has no evidence to the contrary. Merely arguing that there are "credibility" questions and that a jury might not believe Johnson is not enough to defeat summary judgment. For example, in another ADA case, *Ramirez v. Sam's for Play Café*, the court noted: "Defendants argue that Plaintiffs' Declarations regarding the difficulty and discomfort they encountered at Sam's for Play Café are not credible because the testimony is uncorroborated and self-serving. However, subjective credibility judgments such as these do not raise a genuine issue of material fact."[62] As the Ninth Circuit has held: "Neither a desire to cross-examine an affiant nor an unspecified hope of undermining his or her credibility suffices to avert summary judgment" absent a specific, factual basis for disregarding the affidavit.[63] As one court has bluntly stated it: "Summary judgment is the 'put up or shut up' moment in a lawsuit."[64] Once a party has made a properly-supported motion for summary judgment, the nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts.[65] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

Second, even if Starbucks could convince a jury that Johnson had no interest in going the museum and his motivation for going to (and returning later) to Danville was

---

[61] *S.E.C. v. Phan*, 500 F.3d 895, 909 (9th Cir. 2007) (internal cite and quote marks removed for readability)

[62] *Ramirez v. Sam's for Play Café*, 2013 WL 4428858, *7 (N.D. Cal. 2013), *citing*, *Schuler v. Chronicle Broad. Co., Inc.*, 793 F.2d 1010, 1011 (9th Cir.1986).

[63] *Nat'l Fire Ins. Co. v. Argonauts Ins. Co.*, 701 F.2d 95, 97 (9th Cir.1983).

[64] *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010).

[65] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

14

Reply Brief for MSJ            Case: 3:17-cv-02454-WHA

*only* to expose Starbucks's illegal counters and bring a lawsuit, the Ninth Circuit has said this is legitimate. Thus, such a factual finding would not defeat summary judgment. Finally, it should be noted that the Ninth Circuit and the Supreme Court have held that with civil rights cases such as ADA cases, standing is broadly construed.[66] There is no triable issue here. Johnson has standing.

### V. Conclusion

Starbucks has chosen to implement and maintain a sales counter that violates the ADA by not providing useable clear width space. It has been sued repeatedly and successfully for this practice. Johnson is a profoundly disabled quadriplegic who is also challenging this practice. There is no triable issue here. The facts are clear. The law is clear. Criticisms of Johnson for his litigation activity do not create triable issues or defeat summary judgment. Starbucks has not challenged Johnson's request for three statutory penalties—other than to argue that there is no violation. Johnson respectfully requests this court grant his motion for summary judgment. Even if this court found some triable issue regarding the Unruh claims (and Johnson does not see any), the court should adjudicate the ADA claim. These violations continue to exist and Johnson has standing to challenge them.

Dated: November 15, 2018   CENTER FOR DISABILITY ACCESS

By:   /s/ Russell Handy
        Russell Handy, Esq.
        Attorneys for Plaintiff

---

[66] *Doran*, *supra*, 524 F.3d at 1039 -1040 (9th Cir. 2008), *Trafficante v. Metro. Life Ins. Co.*, 409 U.S. 205, 209 (1972).